LEMUEL D. NORTON *et al.*

*v.*

THOMAS RICHMOND.

1. AGENCY—*of evidence in respect thereto.* Even though the course of dealings between parties may have been such as to furnish reasonable cause for the belief on the part of one that a certain person was the properly authorized agent of the other, in respect of such dealings, still, an inquiry by the party alleging the existence of such agency, made of the other party, respecting the authority of the alleged agent to give instructions respecting the subject matter of such dealings, will operate to destroy the effect of circumstances existing prior to such inquiry as establishing the fact of an agency by implication, and thereafter the question whether an agency exists will depend upon the result of the inquiry as to the supposed agent's authority.

2. So where one had deposited money with a commission merchant to be held as margin in respect of the purchase and sale of grain by the commission merchant for the person making the deposit, it appeared a son of the latter had, from time to time, taken such action in behalf of his father in regard to these grain transactions as to indicate that he was the agent of his father in that behalf,—but pending these matters, the father, contemplating an absence for some time, was inquired of by the commission merchant whether he should .obey the direction of the son in regard to the matter of buying and selling the grain,—that is, what the commission merchant was to do in the event the son should desire to buy options and have the deals entered to his father's account. It was held that the answer to this inquiry would control the question of the agency of the son, and, whatever the answer, the facts and circumstances existing prior to the inquiry, which would tend to establish an agency by implication, would no longer have effect to that end, but only as they might tend to show what was that answer, where the testimony was conflicting.

3. The parties were in direct conflict as to the answer made. The person making the inquiry testified that the answer was that the father would see his son, and arrange the matter with him, and give him instructions what to do. If this were really the answer given, it would justify the commission merchant in complying with the directions of the son, and his father would be bound. But the latter testified he made no such answer,—that he told the commission merchant his son was not to direct the matter,—that he would risk no man's opinion but his own. This, if it were the correct response, would show there was no agency.

The conflict between the witnesses was settled by the jury in favor of the person against whom the agency was claimed, and the judgment in his favor for the balance of money deposited, was affirmed.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

In the year 1870, the appellee, Thomas Richmond, deposited with Norton & Co., the appellants, a firm engaged in buying and selling grain on commission in the Chicago market, $5000, upon which he was to receive. interest at the rate of ten per cent per annum. This sum was, from time to time, increased by further deposits, and reduced by moneys drawn out. At different times Richmond ordered the purchase and sale of grain through Norton & Co., and it was understood his account with them should stand as security for these transactions as margins; and the profits and losses

resulting were duly entered in his account. On the first day of May, 1873, the balance of account, including interest, was $5462.95 in favor of Richmond.

Richmond had a son, Holland Richmond, residing with him, and not engaged in any business.

In the latter part of August, 1873, appellants had on hand some 25,000 bushels of grain, bought for account of appellee, and the latter was about to leave the city for a trip East. Just before leaving he had one or more conversations with Mr. Hill, the person immediately in charge of the purchases and sales of grain for appellants, relating to the authority of the son Holland, after the departure of his father.

The substance of such conversation or conversations is, to some extent, in dispute.

After the departure of appellee certain purchases and sales of grain were made by appellants, on orders received from Holland, which resulted in a heavy loss, which was charged to the account of appellee and brought him in debt to appellants to a considerable amount. On the return of appellee from the East, early in November, 1873, he repudiated the transactions had on Holland's orders, except as to the grain on hand when he left the city. He subsequently brought this suit to recover the balance of his account, exclusive of the matters relating to the disputed transactions.

The appellants filed a plea of set-off, claiming a balance due them on account of the losses referred to.

On the trial of the case the jury returned a verdict for appellee in the sum of $6364.94, from which appellee remitted $364.94, and judgment was entered for $6000. Thereupon appellants prosecuted this appeal.

On the trial in the circuit court Charles E. Hill testified, among other things, as follows:

At the time Thomas Richmond left the city, in August, 1873, he had some transactions not closed on the books of Norton & Co.—about 25,000 bushels of grain. Shortly before he left, he called on Norton & Co. He had about

24—93 ILL.

25,000 bushels of grain bought for future delivery, and, as he was going away, defendants wanted to know what disposition to make of it. Mr. Richmond said that he would leave word with Holland what to do about the grain. I followed Mr. Richmond outside of the door of the office, and said to him, "Now, Mr. Richmond, you understand and know that Holland has been here, and wanted us to trade, and has asked us to trade for him. He asked us to trade for him on your account, and you have, once or twice,—may be oftener, I don't remember now—told us yes, to trade for Holland, and to enter the deal to your account — to Thomas Richmond's account, for Mr. Holland Richmond." I stated this to him, and told him, "Now," says I, " I want to know, if Mr. Holland Richmond comes in and orders anything done, if it is all right, and if you understand that it is going to be all right. If Mr. Holland Richmond comes in here and gives an order, shall we do it for your account?" Mr. Richmond said, " I will see Holland and arrange that with him, and give him instructions what to do." That was Mr. Richmond's reply.

The substance of Thomas Richmond's testimony on this branch of the case was as follows:

Witness transacted his business with Norton & Co., himself, up to the time he went East. Gave a separate order always, both in buying and selling option contracts. He had two conversations with Mr. Hill, which embraced what Mr. Hill, in his evidence, ran into one. A few days before witness went East, he met him in Mr. Norton's office. Mr. Hill said that Holland Richmond talked as though he wanted him to buy, and upon asking witness if he should buy on his son's direction, witness replied as follows: " No, sir; I can not loan my margins. The money I have got here is all I have got in the world to carry me through—an old man, with these gray hairs. Mr. Hill, I will risk this money—it is all I got—I will risk it on no man's opinion but my own, and I must not lose it."

A few days after, on the 17th of August, witness went into Hill's office and told him he was going East that evening. Hill asked what he should do with his options—whether he should sell them that day. To which witness replied: "No; I will ask Holland to keep watch of the market, and consult with you about the sale of these options."

That was the close of that transaction. The conversations were several days apart. Witness went home and said same thing to Holland. Not a word was said by witness, or by Mr. Hill, on the morning of the 17th, touching the purchase of another bushel. The whole thing summed up in the consultation of Holland Richmond in selling the options. Witness never authorized Holland Richmond to purchase or sell grain on his account after he went East, nor did he ever make any statement to that effect to Norton & Co., Mr. Hall, or to any one acting in their behalf.

Messrs. JEWETT & NORTON, for the appellants.

Mr. E. P. WEBER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Prior to the departure of appellee from Chicago, Mr. Hill applied to him for instructions as to what he was to do in the event Mr. Holland Richmond wished to buy options and have the deals entered to his account. This far, Hill and appellee agree in their testimony. The question asked by Hill was answered by appellee,—both witnesses so state, and they only disagree as to what that answer, the turning point in the case, was. Appellee testifies his reply was: "No, sir; I can not loan my margins. The money I have got here is all I have got in the world. * * * * I will risk it on no man's opinion but my own, and I must not lose it." If he is correct, then it is evident appellants were not authorized, during

his absence, to permit Holland Richmond to buy deals on his credit, and hold his deposit as security therefor. Hill testifies the reply was: "I will see Holland and arrange that with him, and give him directions what to do." If this was the answer, then it virtually referred appellants to Holland Richmond for instructions; and in that event, the subsequent orders of Holland would bind appellee.

The point is here. Appellants, by their agent, applied to appellee for directions as to what course to pursue in the event of a certain contingency, which contingency afterwards arose. Appellee made some answer to the question propounded to him, and that answer, once ascertained, settles this controversy. The evidence would indicate he either told Hill he would not loan his margins or else he referred him to his son, Holland Richmond, for information. In either case, the antecedent facts and circumstances which would tend to establish an agency by implication become wholly powerless to bind appellee, and useless for any purpose further than as they might have probative force as tending to show it was more probable the one answer was given than the other. For this latter purpose they may be regarded as of weight.

If the testimony of appellee is true, then the implied agency, if any, that had theretofore existed, to buy options, was expressly revoked. If the testimony of Hill is to be depended upon, then it is at least evident he was not relying on any implied agency growing out of an antecedent course of dealing, and did not at the time understand Holland Richmond was the duly authorized agent of Thomas Richmond. Otherwise, he would hardly have asked the questions he says he did ask: "I want to know, if Mr. Holland Richmond comes in and orders anything done, if it is all right, and if you understand it is going to be all right?" "If Mr. Holland Richmond comes in here and gives an order, shall we do it for your account?" These questions show conclusively that at the time of propounding them Mr. Hill did not rely on any implied agency in that behalf. If there is any implied

agency as regards the transactions in dispute, it grows out of what Hill claims was the reply of appellee: "I will see Holland and arrange that with him, and give him instructions what to do." After the application for instructions, and the answer given, appellants had no right to rely on antecedent facts, even if they, of themselves, furnished reasonable cause to believe the agency existed; they should have relied only on the answer and the reasonable implications deducible therefrom.

The *status* of the parties was changed by the question and answer, whichever way the answer may have been. If there was an agency thereafter, so far as regards dealings with appellants, it had for its basis the answer of appellee, and was not predicated upon a precedent course of dealing. These antecedent transactions were, then, taken out of the case, further than they may tend to throw light to determine which of the two witnesses is correct in his statement as to what was said.

The real case of Norton & Co., as we understand it, was fully and fairly stated to the jury by the 2d instruction given in their behalf. That instruction was as follows:

"The jury are instructed, as a matter of law, that an agency may be established by parol; and if they believe, from the evidence in this case, that Thomas Richmond, the plaintiff, when asked by Mr. Hill, the agent of defendants, what course should be taken during his absence, in regard to the orders of Holland Richmond in reference to grain transactions, replied that Holland would let them know, then this was equivalent to saying that defendants were at liberty to accept Holland's representation in relation to that subject, and that Holland's subsequent orders bind the plaintiff."

The 4th instruction asked by them was properly refused. It was based on the hypothesis of there having been a course of dealing that afforded Norton & Co. reasonable grounds to suppose the son was the agent of the father, and wholly

ignored the application made to the father for directions in the premises, and the reply made by him.

The 5th instruction asked by appellants merely stated an abstract principle of law, and there was no error in refusing it.

The 6th instruction asked was vicious for the same reason the 4th was vicious.

The 3d instruction, as it was asked by appellants, told the jury "that if, under all the circumstances connected with the dealings of the parties, and considering the conversation between Thomas Richmond and Mr. Hill, the defendants had reasonable cause to believe, etc., that is sufficient." In other words, the "reasonable cause to believe" might well, under this instruction, have been predicated wholly upon "the circumstances connected with the dealings of the parties," or upon those circumstances conjoined to the conversation between Hill and Richmond. The burden was on appellants to establish the agency. They sought to do this by proof of a conversation at which there were but two persons present, and these two persons contradicted each other as to the salient point of that conversation. So, the matter turned upon the relative credibility of these two witnesses. The salient point was, that by said conversation either the agency to buy options was denied, or else Hill was referred to the supposed agent for directions as to the extent of the agency. As we have seen, the circumstances of past dealings were no longer the measure to test the scope of the agency, the answer made to the direct question asked was thenceforward that measure, and the only material inquiry was, what was that answer? The jury may have believed the prior course of dealing sufficient of itself to establish an implied agency; *non constat* that agency continued after the conversation. If the evidence failed to show a preponderance of probability to establish the answer as contended for by appellants as against the answer as contended for by appellee, then the defence of agency failed.

The jury might have determined the testimony equally bal-

anced as to what the reply of Thomas Richmond was, and
that, too, after giving all due weight to the circumstances
corroborative of the one witness or the other, and yet they
might, under the instruction, have concluded that, even con-
sidering the evidence as to the conversation on an equipoise,
there was sufficient, *aliunde* the conversation, "under all the
circumstances connected with the dealings of the parties," to
give "the defendants reasonable cause to believe" Holland
Richmond was authorized to make the deals in controversy.

We are of opinion there was no error in refusing the in-
struction as it was asked.

The instruction as modified by the court and given to the
jury was, in substance, that it was not necessary for the de-
fendants to prove by direct evidence that Thomas Richmond
did actually direct his son to give the orders, but if from all
the evidence the jury believed Holland Richmond was author-
ized to act as agent of his father, during the absence of the
latter, in directing the sales and purchase of grain, that was
sufficient to charge the father.   If this instruction stood alone,
it might be successfully urged the court cast the burden upon
defendants to establish, in some way, *actual* authority from
the father to the son.   But the whole of the series of in-
structions are to be considered together.   The jury had just
been told, in the immediately preceding instruction, that if
they believed from the evidence Thomas Richmond had, in
answer to the query of Hill, referred him to Holland Rich-
mond, "then this was equivalent to saying that defendants
were at liberty to accept Holland's representations in relation
to that subject, and that Holland's subsequent orders bind the
plaintiff."   We think, in view of this second instruction for
defendants, the jury could not have been misled to believe it
necessary actual authority to the son should be shown.

Exceptions are taken to the second and third instructions
for appellee.

The gist of the second instruction is, that the burden of
proof was upon appellants to establish the agency, the benefit

of which they claimed. It is true, the instruction does not inform the jury there may be an implied agency, by way of estoppel, which will be effective as between an alleged principal and a third party who deals upon the faith of an authority held out by such principal. But we do not understand it is required each and every instruction shall cover all the law on both sides of the case. The office of the third instruction was to inform the jury as to the scope and limitations of an authority which was confined to "the sale of option contracts then on hand;" and, qualified as it was by the clause, "if you are satisfied he was not held out to defendants otherwise as agent of plaintiff," we are unable to see what detriment defendants could take therefrom. We think there is no substantial error in either of these instructions.

The testimony in this case was conflicting. On the main point the two principal witnesses were in direct conflict. The testimony of Holland Richmond tended to confirm that of his father. Some of the circumstances in proof were corroborative of the statements of Hill, and some corroborative of those of Thomas Richmond. The jury were the judges of the fact, and it was their province to determine the degree of weight to be given the testimony of each witness. We see no sufficient reason for disturbing the verdict.

The judgment will be affirmed.

*Judgment affirmed.*